IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TINA SHERER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-cv-0082-MJR-PMF |
| | ) |
| CASEY'S GENERAL STORES, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

REAGAN, District Judge:

    A.    <u>Factual and Procedural Background</u>

Tina Sherer worked for Casey's Retail Company ("Casey's") from December 30, 2008 to mid-May 2010. Hired as a cashier, Sherer was later promoted to assistant manager of the Casey's store in Wood River, Illinois. While she was working a busy shift in that capacity on May 11, 2010, a shipment of inventory arrived at the store. Sherer completed her routine job duties but did not unload the shipment that had been delivered. Six days later, Casey's fired Sherer.

On December 29, 2010, Sherer filed suit in the Circuit Court of Madison County, Illinois against Casey's (whom she named as "Casey's General Stores, Inc.").[1] Her complaint contains two counts. Count 1 alleges "wrongful discharge," and Count 2 alleges intentional infliction of emotional distress.

---

[1] Defense counsel clarifies (Doc. 7, n.1) that Sherer's employer actually was *Casey's Retail Company*, a subsidiary of Casey's General Stores, Inc. In other words, Casey's General Stores, Inc. is incorrectly named as the Defendant herein. Plaintiff Sherer can correct this in her First Amended Complaint, the filing of which is described further below.

Served with the state court complaint on January 10, 2011, Casey's timely removed the action to this United States District Court. Subject matter jurisdiction rests on the federal diversity statute, 28 U.S.C. § 1332. The parties are completely diverse. Sherer is an Illinois citizen, and *both* Casey's – the named Defendant and the subsidiary/true employer – are Iowa citizens (incorporated in and maintaining principal places of business in that state). And the complaint indicates that the amount in controversy exceeds the $75,000 mark, exclusive of interest and costs.

On February 4, 2011, Casey's moved to dismiss plaintiff's complaint "in its entirety with prejudice," pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 7). The motion is fully briefed with response and reply (Docs. 13 and 15). For the reasons described below, the Court partially grants the dismissal motion.

B. <u>Applicable Legal Standards</u>

A 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. ***Hallinan v. Fraternal Order of Police Chicago Lodge 7*, 570 F.3d 811, 820 (7th Cir.),** *cert. denied*, **130 S. Ct. 749 (2009).** The United States Supreme Court explained in ***Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)**, that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See* ***Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009);** ***St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)**, *cert. denied*, **128 S. Ct. 2431 (2008).**

Even though *Twombly* (and *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). The level of detail the complaint must furnish can differ depending on the type of case before the Court. So for instance, a complaint involving complex litigation (antitrust or RICO claims) may need a "fuller set of factual allegations … to show that relief is plausible." *Tamayo*, 526 F.3d at 1083, *citing Limestone Dev. Corp. v. Village of Lemont, Illinois*, 520 F.3d 797, 803-04 (7th Cir. 2008).

The Seventh Circuit Court of Appeals has offered further direction on what (post-*Twombly & Iqbal*) a complaint must do to withstand dismissal for failure to state a claim. In *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008), the Court reiterated: "'surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the allegations must "raise a right to relief above the speculative level." Similarly, the Court remarked in *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010): "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."

More recently, Judge Posner explained that *Twombly* and *Iqbal*:

> require that a complaint be dismissed if the allegations do not state a plausible claim. The Court explained in *Iqbal* that "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. This is a little unclear because plausibility, probability, and possibility overlap.…
>
> But one sees more or less what the Court was driving at: the fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it. …. **[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid,** though it need not be so great a probability as such terms as "preponderance of the evidence" connote…. After *Twombly* and *Iqbal* a plaintiff to survive dismissal "must plead some facts that suggest a right to relief that is beyond the 'speculative level.' " *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir. 2009).

*Atkins v. City of Chicago*, 631 F.3d 823, 831-32 (7th Cir. 2011)(emphasis added). *See also Smith v. Medical Benefit Administrators Group, Inc.,* -- F.3d --, 2011 WL 913085 (7th Cir. March 15, 2011)(Plaintiff's claim "must be plausible on its face," that is, "The complaint must establish a nonnegligible probability that the claim is valid….").  With these principles in mind, the Court turns to Tina Sherer's complaint.

### C. Analysis

Count 1, captioned as "Wrongful Discharge," alleges that Defendant "precipitously and unexpectedly discharged Plaintiff … without asking her explanation and or giving her an opportunity to explain herself" (Doc. 2-1, p. 2). Sherer maintains that her discharge constituted "improper discipline" based on her failing to complete a job assignment – unloading the new shipment of inventory that arrived on May 11th. The discipline/discharge was improper, alleges Sherer, because Casey's failed to follow

its own system of progressive discipline and failed to provide adequate staffing to support her in her assistant manager position, rendering it impossible for her to fulfill her normal work duties *and* unload the shipment without working overtime (which was not allowed).

Casey's moves to dismiss Count 1 because (a) Illinois law does not recognize a general cause of action for wrongful discharge such as pled by Tina Sherer, and (b) Sherer's claim does not fall within the narrow exception to the general rule that, absent a contract, Illinois workers are "at will" employees who may be discharged for any reason or no reason. The Court finds merit in Casey's argument.

Sitting in diversity, the undersigned Judge applies Illinois substantive law. *See, e.g., Lewis v. CITGO Petroleum Corp.*, **561 F.3d 698, 702 (7th Cir.)**, *cert. denied*, **130 S. Ct. 1025 (Dec. 14, 2009)**, *citing Erie R. Co. v. Tompkins*, **304 U.S. 64, 78 (1938).** Under Illinois law, the general rule is that "an employee who does not have an employment contract can be fired at the will of the employer." *Robinson v. Alter Barge Line, Inc.*, **513 F.3d 668, 671 (7th Cir. 2008).** Stated another way: "The general rule in Illinois is that an at-will employee may be discharged by the employer at any time and for any reason." *Grabs v. Safeway, Inc.*, **917 N.E.2d 122, 126 (Ill. App. 2009).**

Illinois law carves out narrow exceptions to this rule if the employee was fired for reporting dangerous or illegal activities at work, *Robinson*, **513 F.3d at 671,** *citing Metzger v. DaRosa*, **805 N.E.2d 1165 (Ill. 2004),** or the employee was terminated for exercising a right granted under the Illinois Workers' Compensation Act, **820 ILCS**

305/1, *et seq.* **(West. 2006)**, such as pursuing workers' compensation benefits. *Grabs*, **917 N.E.2d at 126,** *citing Kelsay v. Motorola*, **384 N.E.2d 353 (Ill. 1978).**

The Illinois common-law tort of retaliatory discharge is available *only* in these two situations: (1) the discharge stems from exercise of rights under the Illinois Workers' Compensation Act, or (2) the discharge is for "whistleblowing" activities – reporting illegal or improper conduct. *Irizarry v. Illinois Central R. Co.*, **879 N.E.2d 1007, 1012 (Ill. App. 2007),** *citing Sutherland v. Norfolk Southern Ry. Co.*, **826 N.E.2d 1021 (Ill. App. 2005).** In both situations, the discharges are deemed retaliatory because "they violate a clear mandate of public policy." *Grabs*, **917 N.E.2d at 126**.

The tort of retaliatory discharge "has been narrowly construed in Illinois to include only discharges in retaliation for certain activities, such as reporting an employer's criminal violations, … or violations of health and safety standards," and the Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge." *Darchak v. City of Chicago Bd. of Educ.*, **580 F.3d 622, 628-29;** *citing Fisher v. Lexington Health Care, Inc.*, **722 N.E.2d 1115, 1121 (Ill. 1999), and** *Buckner v. Atlantic Plant Maintenance, Inc.*, **694 N.E.2d 565, 569 (Ill. 1998).**

The Illinois Court of Appeals firmly echoed this point in *Irizarry*, **879 N.E.2d at 1012-13 (emphasis added):**

> "'Other than these two circumstances, … **Illinois courts consistently have refused to expand the tort to encompass a private and individual grievance.'"** *Sutherland, …* 826 N.E.2d 1021, quoting *Geary, …* 793 N.E.2d 128; see also *Buechele v. St. Mary's Hospital Decatur, …* 509 N.E.2d 744 (1987) (refusing to extend tort of retaliatory discharge claim to employee allegedly fired for filing libel and slander suit

against her employer, because the action involved only individual rights and not any clearly mandated public policy; *Eisenbach v. Esformes*, … 582 N.E.2d 196 (1991) (refusing to extend tort of retaliatory discharge to plaintiff, a limited partner, who alleged that he was terminated in retaliation for suing the general partner for breach of fiduciary duty because the action involved no clearly mandated public policy).…

Thus, to establish a retaliatory discharge, an Illinois plaintiff must demonstrate that she was discharged in retaliation for her protected activities and that the discharge violated a clear mandate of public policy. ***Darchak*, 580 F.3d at 628-29, citing *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009).**

We are at the pleading stage here (not the proof stage), but accepting as true the factual allegations and drawing in Sherer's favor all reasonable inferences therefrom, she has not stated a claim for retaliatory discharge. She does not allege that she exercised any right or remedy granted by the Illinois Workers' Compensation Act, and she has not identified any whistleblowing-type conduct on her part, such as reporting illegal activity by Casey's. Moreover, Sherer's discharge did not violate any clear mandate of public policy in Illinois.

Endeavoring to avoid dismissal of Count 1, Sherer tenders dual grounds for the Court to find that she was *not* an at-will employee. First, she contends that an **employee handbook** created a binding contractual relationship with her, obligating Casey's to provide progressive discipline rather than immediate discharge. Second, she contends that the discharge ran afoul of **on-line job descriptions** which limited the manager's discretion to discipline an assistant manager (like her) and set forth all tasks

expected of her (a list that did *not* include unloading inventory). These arguments (and the attempt to recast Count 1 "Wrongful Discharge" as a contract claim) are unavailing.

An employee handbook or policy statement *can* create enforceable contractual rights. But for that to occur, the traditional requirements of contract formation must be satisfied. ***See Stoll v. United Way of Champaign County, Illinois, Inc.*, 883 N.E.2d 575, 578-79 (Ill. App. 2008),** *citing Duldulao v. Saint Mary of Nazareth Hospital Center*, **505 N.E.2d 314, 318 (Ill. 1987).** Those requirements were not met here. Accepting as true the well-pled allegations of the complaint, the Court can discern no promise from Casey's to Sherer sufficiently definite that a reasonable employee would believe it constituted an "offer."

In her response to the dismissal motion, Sherer maintains that the employee handbook contained an "offer of Progressive Discipline" which she "expected … would be used" and was not (Doc. 13, p. 2). The employee handbook is not specifically quoted in or attached to Plaintiff's complaint. Count 1, however, does refer to Casey's mission statement and "disciplinary policy" (parts of the handbook), and Casey's furnished excerpts of the handbook with its dismissal motion, asserting that the Court may consider the handbook provisions, because they were referred to in the complaint.

The law of this Circuit permits a district court, on a Rule 12(b)(6) motion, to consider documents to which a complaint refers, if the documents are central to the plaintiff's claim and their authenticity is not contested. ***See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)("This court has been relatively liberal in its approach to**

**the rule articulated in *Tierney* [*v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002)] and other cases.").** Both criteria are met here, allowing the undersigned to look "outside the pleadings" on this 12(b)(6) motion, without violating Rule 12(d).

The employee handbook dooms Sherer's argument that her wrongful discharge claim rests on a binding promise made by Casey's to only use a certain system of progressive discipline. The handbook does *not* promise progressive discipline. The applicable provision (Section 34.300 "Corrective Action") plainly states that any of several "methods" of corrective action – including discharge – "may be imposed at any time at the discretion of the appropriate Supervisor," and also that nothing in the section "is intended to impact the Conditions of Employment which provide that the employment relationship is AT WILL and may be severed by either party at any time for any reason" (Doc. 15-1, p. 2).

Moreover, in Section 1, a prominent disclaimer in capital letters unambiguously exclaims: "YOUR EMPLOYMENT WITH CASEY'S IS AT WILL AND MAY BE SEVERED BY EITHER PARTY AT ANY TIME WITH OR WITHOUT CAUSE. THIS EMPLOYEE HANDBOOK … IS NOT INTENDED TO CREATE A CONTRACT AND YOU SHOULD NOT EXPECT IT TO DO SO" (Doc. 15-1, p. 1). As the Seventh Circuit declared in 2007: "A handbook that contains a clear promise of continued employment gives rise to legal entitlements…. At the same time, disclaiming language in a handbook may preclude the formation of an employment contract." *Moss v. Martin*, **473 F.3d 694, 700 (7th Cir. 2007),** *citing Davis v. Times Mirror Magazines, Inc.,* **697 N.E.2d 380, 388 (Ill. App. 1998).**

Sherer's reliance on the job descriptions as a source of contractual rights supporting a wrongful discharge claim likewise fails. The job descriptions, found in the "Career Opportunities" section of Casey's website, simply list the general duties and responsibilities for Store Managers and Assistant Managers. Sherer has cited (and the undersigned Judge is aware of) no Illinois precedent that such generic material on a website could give rise to legally binding contractual entitlements. This leaves the presumption under Illinois law (as buttressed by the Casey's employee handbook) that this employment was at will, terminable by either party. *See Stoll*, **883 N.E.2d at 578.**

Accepting as true the allegations of the complaint and drawing in Sherer's favor the reasonable inferences from those allegations, the Court concludes that Count 1 does not state a plausible claim for retaliatory discharge. Count 1 fails to state a claim upon which relief can be granted, leading the Court to Count 2 of Sherer's complaint.

Count 2 alleges intentional infliction of emotional distress by Casey's. Sherer alleges that she "dedicated herself to working for [Casey's] doing all of the job assignments in a timely and efficient manner," that Casey's "precipitously and unexpectedly discharged" her for failing to unload the new shipment of inventory, that Casey's did not let her "explain herself," that the discharge "has been extremely upsetting to the Plaintiff who has less power in the relationship," and that the firing has caused "great financial stress and profound emotional stress to Plaintiff" (Complaint, Doc. 2-1, pp. 3-4).

Casey's launches two attacks on this claim. First, Casey's contends that the intentional infliction of emotional distress (IIED) claim is barred by statute (i.e., the

exclusivity provisions of the Illinois Workers' Compensation Act barring an employee's intentional tort claims against a coworker).  Second, Casey's argues that if the Act does not bar Sherer's IIED claim, Count 2 fails to state a claim for IIED under Illinois law.

Twenty years ago, the Illinois Supreme Court explained in *Meerbrey v. Marshall Field & Co.*, **564 N.E.2d 1222, 1225 (Ill. 1990)**:

> The Workers' Compensation Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment…. Accordingly, the Act imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer.  The exclusive remedy provision "is part of the quid pro quo in which the sacrifices and gains of employees and employers are to some extent put in balance, for while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts."

The exclusivity provision, 820 ILCS 305/5(a), states that other than compensation provided under the Act, no common-law or statutory right is available to recover damages from the employer for injury to an employee engaged in the duties of employment.  So, it is well-settled in Illinois "that an individual working within the scope of his employment may not sue a fellow employee for injuries allegedly sustained as a result of a tort.  Rather, his sole remedy is a claim for benefits pursuant to the Act (820 ILCS 305/1, et seq.)."  *U.S. Bank v. Lindsey*, **920 N.E.2d 515, 523 (Ill. App. 2009).**

Furthermore, respondeat superior liability is not available to overcome the preemptive effect of the Act.  *McPherson v. City of Waukegan*, **379 F.3d 430, 442 (7th Cir. 2004).**  An employer cannot be liable for a worker's tortious acts against a co-worker.

The preemptive effect of the Act can be avoided four ways -- if the employee proves that the injury did not arise from her employment, that the injury was not received during the course of her employment, that the injury was non-compensable under the Act, or that the employer itself "committed, commanded, or expressly authorized the torts against" the employee. *McPherson*, **379 F.3d at 443,** *citing Juarez v. Ameritech Mobile Communications, Inc.*, **957 F.2d 317, 323 n.4 (7th Cir. 1992).** Sherer's complaint does not allege that Casey's expressly authorized its employee (her manager) to intentionally inflict emotional distress upon her. Nor does Count 2 contain any other allegations removing the IIED claim from the preemptive effect of the Act.

Assuming arguendo that the exclusivity provision presents no bar to Sherer's IIED claim, Count 2 fails to state a claim upon which relief can be granted. The elements of an intentional infliction of emotional distress (IIED) claim in Illinois are threefold: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress *or* knew there was a high probability that severe emotional distress would result from his conduct, and (3) the conduct in fact *did* inflict severe emotional distress on the plaintiff. *See Lopez v. City of Chicago*, **464 F.3d 711, 720 (7th Cir. 2006),** *citing McGrath v. Fahey*, **533 N.E.2d 806, 809 (Ill. 1988);** *Lifton v. Board of Educ.*, **416 F.3d 571, 579 (7th Cir. 2005),** *citing Thomas v. Fuerst*, **803 N.E.2d 619, 625 (Ill. App. 2004).**

Count 2 falls short on the first two of these elements.  Sherer does not allege that Casey's conduct was extreme and outrageous *or* that Casey's intended to inflict severe emotional distress (or knew there was a high probability it would result).

Furthermore, Illinois law is clear on what constitutes extreme and outrageous conduct.  The defendant's conduct must be "so extreme as to beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." ***Hukic  v. Aurora Loan Services*, 588 F.3d 420, 438 (7th Cir. 2009),** *quoting Kolegas v. Heftel Broad. Corp.***, 607 N.E.2d 201, 211 (Ill. 1992), and** *Lewis v. School Dist. #70***, 523 F.3d 730, 747 (7th Cir. 2008).**  Taking as true Sherer's allegations that the manager precipitously fired her without furnishing an opportunity to explain her failure to unload the shipment or giving her extra staff to assist in the task, this does not allege conduct contravening the bounds of decency in a civilized community.

Due to the shortcomings as to the first two elements of an IIED claim, the Court need not reach the third element of the claim and finds that Count 2 fails to state a claim on which relief can be granted.  Bearing note, however, as to the third element, for the conduct to have actually caused "severe emotional distress," Illinois law requires that the distress inflicted be "so severe that no reasonable person could be expected to endure it."  *Lifton***, 416 F.3d at 579*.*  Count 2 alleges that Sherer's discharge resulted in "great financial stress" and "profound emotional distress," but it is a stretch to reach that conclusion from the remainder of the allegations which attribute that stress to a seemingly routine, frequently-occurring event – a discharge following quickly on the heels of an employee's failure (or perceived failure) to complete a job assignment.

D. Conclusion

Accepting as true Plaintiff's factual allegations and drawing all reasonable inferences therefrom in her favor, the Court concludes that the complaint fails to state a claim for wrongful discharge or intentional infliction of emotional distress. The complaint provides fair notice of what Sherer is claiming, but the allegations do not show that "it is plausible, rather than merely speculative" that Sherer is entitled to relief under either of these legal theories. ***Reger Development, LLC v. National City Bank*, 592 F.3d 759, 763-64 (7th Cir.),** *cert. denied*, **130 S. Ct. 3507 (2010),** *quoting Tamayo*, **526 F.3d at 1083.**

The Court **GRANTS** Casey's motion (Doc. 7) to dismiss the complaint, but (a) dismissal shall be *without* prejudice, (b) Sherer is **GRANTED LEAVE** to file a First Amended Complaint **by April 21, 2011**, and (c) the Court **declines** to award attorneys' fees and costs (fleetingly requested in one sentence of the motion at Doc. 7). Failure to timely file an amended complaint **may result in dismissal** of this action with prejudice.

IT IS SO ORDERED.

April 21, 2011.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge
